1   KARIN G. PAGNANELLI (SBN 174763)
      kgp@msk.com
2   MITCHELL SILBERBERG & KNUPP LLP
    2049 Century Park East, 18th Floor
3   Los Angeles, CA 90067-3120
    Telephone: (310) 312-2000
4   Facsimile: (310) 312-3100

5   Attorney for Plaintiffs
    Zynga, Inc. and Rollic Games Oyun Yazılım
6   ve Pazarlama A.Ş.

7

8                   UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10

11  ZYNGA, INC., a company incorporated under       CASE NO. 3:25-cv-01173
    the laws of the State of California, United
12  States, and ROLLIC GAMES OYUN              **COMPLAINT FOR COPYRIGHT**
    YAZILIM ve PAZARLAMA A.Ş., a company        **INFRINGEMENT**
13  incorporated under the laws of the Republic of
    Türkiye,                                    **JURY DEMAND**
14
                  Plaintiffs,
15
            v.
16
    ADONE PTE. LTD., a company incorporated
17  under the laws of Singapore, and DOES 1-10,
    inclusive,
18
                  Defendants.
19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

                        **COMPLAINT**

## INTRODUCTION

1.    Plaintiff Zynga, Inc. ("Zynga") is a leading video game company at the forefront of the casual mobile gaming market and a parent company of Plaintiff Rollic Games Oyun Yazılım ve Pazarlama A.Ş. ("Rollic"), the creator of the popular game "Screw Jam." Casual mobile games are intuitive games with low barriers to entry and relatively straightforward gameplay. Such games are typically free-to-play, with game developers earning revenue from in-app purchases and advertising. Thus, user engagement is critical for a casual game's success, and the temptation to copy an already successful game, with a proven track record and built-in audience, is strong.

2.    Plaintiffs bring the instant action against Defendants to protect their intellectual property rights in the popular game *Screw Jam*. *Screw Jam* is a fast-paced, physics-based puzzle game where players must navigate a series of increasingly challenging levels by strategically placing screws to unlock the elements on the playing field. The game combines elements of precision, timing, and problem-solving, making it outstandingly engaging.

3.    *Screw Pin Puzzle / Screw Pin - Jam Puzzle* deliberately mimics the theme, look and feel, level designs, color combinations, specific shapes and objects, graphic effects, game progression, game interface, and numerous other specific protectable elements of *Screw Jam* as detailed further below.

4.    To remedy this willful infringement, Plaintiffs bring this suit for injunctive relief, damages, and Defendants' unjust profits resulting from this infringement.

## THE PARTIES

5.    Zynga is a corporation duly organized and existing under the laws of California, United States. Zynga, headquartered in San Francisco, is a market leader in the competitive casual gaming market and is in the business of producing, developing, publishing, distributing, and marketing a catalog of high-quality mobile game products, including *Screw Jam*. The United States is Zynga's largest market for its games, including *Screw Jam.*

6.    Rollic is a mobile game development company incorporated under the laws of the Republic of Türkiye and fully owned by Zynga.

Mitchell
Silberberg &
Knupp LLP

7.    Plaintiffs are informed and believe, and on that basis allege, that Defendant AdOne PTE. LTD. ("AdOne") owns rights in the game titled *Screw Pin Puzzle/ Screw Pin - Jam Puzzle* and is responsible for the creation, development, and distribution of *Screw Pin Puzzle/ Screw Pin - Jam Puzzle.*

8.    Plaintiffs are informed and believe, and on that basis allege, that Defendant AdOne is registered under the laws of Singapore, but has its development operations based in Vietnam.

9.    Plaintiffs are informed and believe, and on that basis allege, that AdOne publishes one of its games under the name "WeMaster Games." The counter notice to Google Play sent by Defendants in response to the DMCA notice filed against *Screw Pin - Jam Puzzle* was sent by hoaipt@adone.net. On the official website of AdOne, Defendant AdOne claims WeMaster to be their store:[1]

> OUR STORES
> WeMaster - Home of hit games
> WeMaster is one of our official stores, being launched under Google Play and Appstore.

10.    WeMaster Games' Google Play store provides web address "https://adone.net/" for app support for a WeMaster account.[2] The AppBrain page for WeMaster indicates that the website for WeMaster is "https://adone.net/."[3]

11.    The true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants sued herein as Does 1-10 inclusive, are unknown to Plaintiffs, which have therefore sued said Defendants by such fictitious names. These Defendants may include individuals whose real identities are not yet known to Plaintiffs, but who are acting in concert with one another in committing the unlawful acts alleged herein. Plaintiffs will amend this complaint to state Defendants' true names and capacities once they are ascertained. Plaintiffs are informed and believe, and on that basis allege, that all Defendants sued herein are liable to Plaintiffs as a result of their participation in all or some of the acts set forth in this complaint.

---

[1] https://adone.net/

[2] https://play.google.com/store/apps/details?id=com.screwout.nutsjam&hl=en_US

[3] https://www.appbrain.com/dev/WeMaster+Games/

12.     Plaintiffs are informed and believe, and on that basis allege, that at all times mentioned in this complaint, each of the Defendants was the agent of each of the other Defendants and, in doing the things alleged in this complaint, was acting within the course and scope of such agency.

**JURISDICTION AND VENUE**

13.     This is a civil action seeking damages, injunctive relief, and other equitable relief under the Copyright Act, 17 U.S.C. § 101 *et seq.*

14.     This Court has subject matter jurisdiction over Zynga's claims for copyright infringement pursuant to 28 U.S.C. §§ 1331 and 1338(a).

15.     This Court has personal jurisdiction over Defendant AdOne because it has accepted the jurisdiction of Federal District Court for the Northern District of California by sending the counter notification to Google Play on January 21, 2025.

16.     Additionally, this Court has personal jurisdiction over Defendants because they have a substantial presence in, and purposefully directed their activities at the United States, and at California in particular, and have purposefully availed themselves of the benefits of doing business in California. Plaintiffs are informed and believe, and on that basis allege, that, without limitation:

(a)     Defendant AdOne intentionally chose to distribute *Screw Pin Puzzle / Screw Pin - Jam Puzzle* in the United States and the State of California through the Google Play and Apple App Stores. Zynga is informed and believes, and on that basis alleges, that Defendant AdOne intentionally uploaded *Screw Pin Puzzle / Screw Pin - Jam Puzzle* to servers located in the United States, specifically requested that the Google Play and App Stores distribute *Screw Pin Puzzle / Screw Pin - Jam Puzzle* worldwide, including in the United States, and deliberately chose not to exclude or block customers in the United States from accessing and downloading *Screw Pin Puzzle / Screw Pin - Jam Puzzle* ;

(b)     Defendant AdOne has targeted its games, including *Screw Pin Puzzle / Screw Pin - Jam Puzzle*, to United States customers, including by intentionally directing advertising for their games to U.S. customers, promoting their games via English

Mitchell
Silberberg &
Knupp LLP

language websites. As set forth below, Defendant AdOne knows and intends that its games are played by U.S. customers.

(c)     Defendant AdOne conducts extensive and ongoing business with customers in the United States and the State of California, including through in-game purchases made by customers in the United States and the State of California. Defendants promote and advertise those in-game purchases in U.S. Dollars. Plaintiffs are informed and believe, and on that basis allege, that such in-game purchases include charges in U.S. Dollars made to customers by California-based Apple and Google, which then take up to a 30% platform fee (and other assessed charges) in California before remitting any payment (also in U.S. Dollars) to Defendant;

(d)     Defendant AdOne has directed its unlawful activities at Plaintiffs, including by deliberately copying and appropriating Plaintiffs' copyrighted content. Defendant AdOne did so knowing and intending that Plaintiffs would be harmed by its conduct, including in the United States where Zynga is incorporated and which is the biggest market for Zynga.

(e)     Defendant AdOne advertises and markets its games in the United States and the State of California, and communicates directly with users in the United States, including for the purposes of soliciting downloads of the game by such users.

(f)     Defendant AdOne enters into contracts with, and utilize the services of, numerous U.S. companies, including domain name registrars, hosting providers, and payment processors. Defendant AdOne also enters into license agreements with U.S.-based software companies for the use of software or programming tools.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because this is a judicial district in which Zynga resides and a substantial part of the events giving rise to the claims occurred. Additionally, Defendant AdOne has accepted the jurisdiction of Federal District Court for the Northern District of California by sending the counter notification on Google Play on January 21, 2025.

## FACTS APPLICABLE TO ALL CLAIMS

### Zynga and Its Games

18.     Zynga is a leading mobile developer and publisher in the business of developing, publishing, and marketing original, high-quality mobile games. By exploring innovative mechanics and unique game designs, Zynga ensures that its games deliver engaging and fresh experiences for players worldwide. This commitment to innovation allows Zynga to remain at the forefront of the gaming industry while continuously expanding its creative portfolio.

19.     Rollic is a leading mobile developer and publisher that focuses on casual games. Rollic has released numerous successful titles, many of which have reached the top charts on the App Store and Google Play.

20.     Plaintiffs have developed unique expertise in the market of casual games. Casual games are characterized by intuitive gameplay, using carefully designed interfaces that are easy for players to learn, as well as using specifically tailored visual elements that include cues, or settings to engage players in short, set durations of gameplay. As a result of Plaintiffs' expertise and creative vision, its games are frequently at the top of the app store charts and are among the most popular mobile titles in the world.

21.     The casual games market is a growing and heavily competitive sector. Because the business model for casual gaming is primarily driven by in-app purchases and advertisement-based revenue, developers of casual games rely heavily on player engagement. Game developers whose games engage the greatest share of players and whose portfolio of work can capture the market are the most successful. However, due to the straightforward and intuitive nature of casual games, once a developer creates and publishes original creative content, it becomes particularly susceptible to "copycat" competitors who can easily replicate the developer's creative elements and release their own clones of the original work. And because casual games are typically free and have low barriers to entry, player loyalty and market share can shift quickly.

### Zynga's Game *Screw Jam*

22.     *Screw Jam* is a prime example of a successful casual game that has been well-received by players, and, as a result, has drawn the attention of competitors and copycats. *Screw*

Mitchell
Silberberg &
Knupp LLP

*Jam* is in the genre of "puzzle games," which means a game designed to test problem-solving skills including pattern recognition, logic, word completion, or understanding a process. *Screw Jam* was developed and published by Rollic worldwide on the Google Play and App Store on December 8, 2023. *Screw Jam* has been downloaded on Google Play more than one million times.

23.     *Screw Jam* is an engaging puzzle game where players tackle the challenge of unscrewing, sorting, and solving intricate screw pin jam puzzles. Players navigate through a world of glass and bolts, matching colors and strategically removing pins, nuts, and screws to clear each level, unlock custom screw tools, and tackle obstacle course levels with shifting mechanics. Daily challenges and special rewards keep the experience fresh, making Screw Jam a must-play for puzzle enthusiasts.

24.     In *Screw Jam*, players progress through a series of increasingly challenging levels, each of which offers new and unique artistic and gameplay elements. Each of *Screw Jam*'s levels has been painstakingly designed by Zynga's development team to provide fresh challenges for the player, and these levels represent a substantial investment of creative time and energy. Players are incentivized to complete levels through an engaging rewards system. As players progress through the levels, they unlock new obstacles and challenges that are uniquely designed with vibrant objects and environments.

25.     Players of *Screw Jam* who wish to enhance their gaming experience or progress more quickly through the game's levels can purchase in-game coins, boosters, and additional lives or infinite lives for a set duration.  Since *Screw Jam* is a free-to-play game (*i.e.*, there is no cost to download and play the game) Plaintiffs' rely on these in-game purchases to recoup their investment in the game. Plaintiffs also earn revenue from *Screw Jam* through advertising.

26.     Representative screenshots of *Screw Jam* are included below:



27.     *Screw Jam* is the product of substantial effort by a team of developers that includes designers, artists, software engineers, and sound designers. *Screw Jam* is a highly creative expressive work, featuring a variety of distinctive and original game elements and art assets, a colorful and original user interface, complex and creative level design, and custom sound effects. Collectively, all of these distinctive and creative elements have imbued the game with a unique and original look and feel that stands out from other games in the field.

28.     Rollic filed for a copyright registration in *Screw Jam*, Application No.: 1-14732867543, dated February 4, 2025.  Plaintiffs' copyright in *Screw Jam* includes all copyrightable subject matter encompassed therein, including its artwork, sound, user interface, screen displays, computer code, and other audiovisual, and graphic elements.

### Defendants' Game *Screw Pin Puzzle / Screw Pin - Jam Puzzle*

29.     *Screw Pin Puzzle / Screw Pin - Jam Puzzle* is a mobile game that is intended to replicate *Screw Jam*. Plaintiffs are informed and believe, and on that basis allege, that *Screw Pin Puzzle / Screw Pin - Jam Puzzle* was developed by Defendant AdOne or by a third-party studio

1   commissioned by AdOne and acting at its direction. *Screw Pin Puzzle* was initially released on the

2   App Store under the title "Screw Pin – Jam Puzzle" (iOS version) on April 16, 2024, and "Screw

3   Pin – Nuts Jam" (Android version) was launched on May 7, 2024.

4       30.     Like *Screw Jam*, *Screw Pin Puzzle / Screw Pin - Jam Puzzle* is a casual mobile game

5   centered screw puzzle mechanics. As in *Screw Jam,* players of *Screw Pin Puzzle / Screw Pin - Jam*

6   *Puzzle* players must remove, unscrew, or manipulate screws, pins, and bolts in the correct sequence

7   to solve challenges. *Screw Pin Puzzle / Screw Pin - Jam Puzzle* game also involves sorting,

8   unlocking pathways, and freeing trapped objects by strategically unscrewing or pulling pins in the

9   right order. The two games are strikingly similar: they include nearly identical levels, the similar

10  level layout, user interface, color scheme, in-game objects, icons, boosters, and even the same

11  textual material.

12      31.     As detailed further below, *Screw Pin Puzzle / Screw Pin - Jam Puzzle* deliberately

13  mimics the theme, look and feel, level designs, color combinations, specific shapes and objects,

14  graphic effects, game progression, game interface, and numerous other specific protectable elements

15  of *Screw Jam*.

16                          **Defendants' Access To *Screw Jam***

17      32.     Plaintiffs are informed and believe, and on that basis allege, that at the time

18  Defendant AdOne created and distributed *Screw Pin Puzzle / Screw Pin - Jam Puzzle*, it had access

19  to *Screw Jam*, via the game's widespread distribution on the app stores, and were aware of its market

20  success. *Screw Pin Puzzle / Screw Pin - Jam Puzzle* was released on April 16, 2024 on the App Store

21  and on May 7, 2024 on Google Play – around six months after *Screw Jam*, released on December

22  8, 2023. Defendants thus had the opportunity to review and analyze *Screw Jam's* market metrics,

23  game's performance, and the game itself. This timing is no coincidence. Even a cursory review

24  reveals pervasive similarities between the games. Those similarities render it apparent that

25  Defendants copied major elements from *Screw Jam*, in violation of Plaintiffs' rights.

26              ***Screw Pin Puzzle / Screw Pin - Jam Puzzle* Is A Copycat of *Screw Jam***

27      33.     *Screw Pin Puzzle / Screw Pin - Jam Puzzle* copies protected expression from *Screw*

28  *Jam* and is an undeniable clone of *Screw Jam.* This is not just a matter of two competitors developing

Mitchell
Silberberg &
Knupp LLP

similar games within the same genre or sharing similar mechanics. The similarities identified by this Complaint, which are only a subset of the infringing copying, are in no way dictated by the genre, the nature of the games, or the rules. They are centered on specific creative decisions that Plaintiffs made in developing *Screw Jam*, which Defendants proceeded to copy wholesale.

34.     Plaintiffs created an original and distinctive game with numerous original elements and protectable expressions, which were copied by Defendants:

- Level layouts
- Level dimensions, *e.g.*, width and height
- Spatial organization of elements
- Coordinates—exact positions of objects on the axis
- Color choice and arrangement
- User experience (UX) of core gameplay
- Player boosters and upgrades
- Feature unlock sequences
- Player "onboarding flow," such as specific priority levels, user instructions, and ad integration

35.     As the non-exhaustive examples above show, the primary attributes of *Screw Pin Puzzle / Screw Pin - Jam Puzzle* are substantially similar to the original and expressive elements of Zynga's *Screw Jam*.

36.     Defendants did not take merely the basic concept of a casual screw puzzle game based on removing, unscrewing, or manipulating screws to complete the challenges. Rather, Defendants wholly misappropriated the very creative combination of elements that Plaintiffs developed. Plaintiffs carefully selected colors, shapes, layouts, and design aesthetics to create a unique and engaging experience in *Screw Jam*. Likewise Plaintiffs specifically designed levels, boosters, and player onboarding sequence to make *Screw Jam* captivating for players.

37.     Defendants' copying of Plaintiffs' original work to create a substantially similar puzzle game is readily evident. Every key element that has made *Screw Jam* so original and unique has been replicated by Defendants in *Screw Pin Puzzle / Screw Pin - Jam Puzzle*. As a result of

1    Defendants' extensive copying, both games are substantially similar in their total concept and feel.

2    The similarities between the games are not coincidental, especially when viewed in the aggregate

3    and in the context of the entire effect the games have on the player. Nor are the similarities described

4    in this Complaint merely the result of two games existing in the same genre. They are the result of

5    willful infringement by Defendants to poach the market for *Screw Jam*.

6                                              ***Level User Interface:***

7           38.     Defendants copied *Screw Jam's* level user interface, spatial organization, size, and

8    proportion of elements; as well as color choice and arrangement.

9           39.     As illustrated on *Fig. 1* and *Fig. 2* below, each game features colorful pastel semi-

10   transparent shades, which users unlock by unscrewing them and collecting crews in the "tool box"

11   on top of the screen. These "tool boxes" are almost identical in both games: they have similar shape,

12   change color to match the screes to be collected and even have the same number of "slots" for

13   collected screws. These UI elements are similarly placed and have the same size. In this seemingly

14   simplistic level layout, Defendants copied the key elements that users interact with level through

15   level. But the similarities do not end there.

16                                        ***Screw Jam* Levels 1-5**



*Fig.* 1: Level user interface for levels 1-5 in *Screw Jam* (red rim added)

1

2

3

4

5

6

7

8

9

10

### *Screw Pin Puzzle* Levels 1-5



11        *Fig.* 2: Level user interface for levels 1-5 in *Screw Pin Puzzle* (red rim added)

12                              ***Main Lobby User Interface***

13        40.      When players of *Screw Pin Puzzle / Screw Pin - Jam Puzzle* finish the level and

14   return to the "home" or "lobby" screen they see *Screw Jam*'s recognizable color scheme and similar

15   UI elements. As illustrated below on *Fig.* 3 and *Fig.* 4: the location of "Profile" icon, "Health Bar"

16   (Lives), "Coin Balance" and "Settings" are in the same exact position in both games. Additionally,

17   the location of time-limited sales, bundles and wheelspin are on the right side of the screen in both

18   games, while time limited mini-games and events are located on the left side of the screen in both

19   games.

20

21

22

23

24

25

26

27

28

*<u>Screw Jam</u>*                    *<u>Screw Pin Puzzle</u>*



*Fig.* 3: Screw Jam "Lobby Interface"          *Fig.* 4: Screw Pin Puzzle "Lobby Interface"

***Profile Customization User Interface***

41.     As illustrated below on *Fig.* 5 and *Fig.* 6, users who would chose to customize their in-game avatar would open a strikingly similar profile customization page in both *Screw Jam* and *Screw Pin Puzzle / Screw Pin - Jam Puzzle.*

*<u>Screw Jam</u>*                    *<u>Screw Pin Puzzle</u>*

 

1    *Fig.* 5: Screw Jam "Profile Interface"     *Fig.* 6: Screw Pin Puzzle "Profile Interface"

2                    **Season Passes User Interface and Instructions**

3       42.    The further the player progresses in *Screw Pin Puzzle / Screw Pin - Jam Puzzle,* the

4    more apparent it becomes that user interface, including the arrangement of elements, are strikingly

5    similar in *Screw Jam* and *Screw Pin Puzzle / Screw Pin - Jam Puzzle*. Defendants meticulously

6    copied every almost every element of Season Passes user interface from *Screw Jam*. As illustrated

7    on *Fig.* 7 and 8, user interface of the Season Pass in *Screw Pin Puzzle / Screw Pin - Jam Puzzle* has

8    the same division of the screens offering two options for passes: in both games users have golden

9    and blue squares offering items for "Golden Pass" and "Free Pass" in *Screw Jam* and "Premium

10   Pass" and "Free Pass" in *Screw Pin Puzzle / Screw Pin - Jam Puzzle.* Screens for Pass Information

11   share even more striking similarities: the screen starts with a "Tool Box" offering players to "beat

12   levels" and goes through exactly the same stages to the "shining" offer of "Gold(en) Pass." *See Fig.*

13   9, 10.

<u>**Screw Jam**</u>          <u>**Screw Pin Puzzle**</u>



*Fig.* 7: Screw Jam "Season Passes"    *Fig.* 8: Screw Pin Puzzle "Season Passes"

Mitchell
Silberberg &
Knupp LLP

28

*Screw Jam*                          *Screw Pin Puzzle*

      

*Fig.* 9: Screw Jam "Pass Information"       *Fig.* 10: Screw Pin Puzzle "Pass Information"

**In-Game Boosters**

43.     Similarities between the levels are noticeable as the game progresses: both games have nearly identical boosters and related gameplay and user interface.  As players progress in both games, they can unlock boosters that enhance the gameplay by collecting items more efficiently. Screw *Pin Puzzle / Screw Pin - Jam Puzzle* copied not only the types of boosters, but also the accompanying text of user instructions. Similar boosters appear at exactly the same levels. At level 5, players in *Screw Jam* receive a new booster: "Extra Hole". In *Pin Puzzle / Screw Pin - Jam Puzzle,* players receive a similar booster "Drill" followed by identical instructions "Get a new hole" and a "Get it" button. *See Fig.* 11, 12.

Mitchell
Silberberg &
Knupp LLP

*Screw Jam*                     *Screw Pin Puzzle*



*Fig*. 11: Screw Jam. level 5 Reward          *Fig* 12: Screw Pin Puzzle. Level 5 Reward

44.     At level 10, in both games, players unlock booster "Hammer." In *Pin Puzzle / Screw Pin - Jam Puzzle*, just like in *Screw Jam*, players also receive identical instructions: "Break a glass." *See Fig*. 13, 14.

*Screw Jam*                     *Screw Pin Puzzle*

 

*Fig*. 13: Screw Jam. Level 10          *Fig* 14: Screw Pin Puzzle. Level 10

45.     At level 15, in both games, players unlock booster "Toolbox." Just like other booster, this one has identical user instructions and is unlocked at exactly the same level. *See Fig*. 13, 14.

**_Screw Jam_**                    **_Screw Pin Puzzle_**

    

*Fig*. 13: Screw Jam. Level 15            *Fig* 14: Screw Pin Puzzle. Level 15

**Game Progression:**

46.     *Screw Pin Puzzle / Screw Pin - Jam Puzzle* replicated each level of *Screw Jam* by implementing the same user interfaces, tasks, and incremental increases in difficulty. *Screw Pin Puzzle / Screw Pin - Jam Puzzle* has not only taken *Screw Jam's* instructions and user interface, but has also copied *Screw Jam's* sequence and game progression, since each corresponding level of *Screw Pin Puzzle / Screw Pin - Jam Puzzle* includes the similar degree of complexity and similar challenges.

47.     As each game progresses, players unlock similar boosters with the same functionality and text instructions.

**Defendants' Ongoing Willful Infringement Harms Zynga**

48.     Plaintiffs are informed and believe, and on that basis allege, that all of the foregoing copying was deliberate and intentional and that, during the development of *Screw Pin Puzzle / Screw Pin - Jam Puzzle*, Defendants used *Screw Jam* as reference, and copied the design of levels, color combinations, design and locations of the individual game elements, user progression, sequence of

events, titles and even the text descriptions of the in-game boosters and instructions. Defendants did so in order to capitalize on *Screw Jam* and divert players from Plaintiffs to Defendants.

49.     The similarities between *Screw Jam* and *Screw Pin Puzzle / Screw Pin - Jam Puzzle* are widespread and pervasive. The comparisons above are a representative, but not exhaustive, list of the striking similarities between the two games. The original game elements of *Screw Jam* as well as Plaintiffs' creative selection and arrangement thereof that Defendants copied are protected. Defendants could have designed a casual puzzle game about a black hole in innumerable different ways, but instead it chose to use exactly the same original, protected expression that Plaintiffs had created for *Screw Jam.*

50.     Because of Defendants' willful conduct, *Screw Pin Puzzle / Screw Pin - Jam Puzzle* has interfered with, and threatens to further disrupt, the growing success of *Screw Jam.* Because *Screw Jam* is a free game, Plaintiffs receive revenue primarily from in-app purchases and from advertisers who pay for ads to be displayed in or in relation to games. That means *Screw Jam's* game revenue is highly dependent on user engagement. Consequently, Defendants' *Screw Pin Puzzle / Screw Pin - Jam Puzzle* jeopardizes the goodwill and player relationships that Zynga has worked to develop. It interferes with Plaintiffs' ability to acquire new players, threatens to divert current players, and harms Plaintiffs' ability to earn revenue from *Screw Jam.*

51.     Therefore, by this action, Plaintiffs seek to prevent Defendants from any further infringement and from causing any further harm to Plaintiffs.

## COUNT I

### (Copyright Infringement – 17 U.S.C. § 501 et seq.)

52.     Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1 through 51 as if set forth fully herein.

53.     Plaintiffs own valid and enforceable copyright in *Screw Jam.*

54.     Defendants have deliberately and intentionally copied the protectable expression from *Screw Jam* in *Screw Pin Puzzle / Screw Pin - Jam Puzzle.*

55.     Plaintiffs have never authorized nor given consent to Defendants to use their copyrighted work in the manner complained of herein.

56.     Thus, Defendants have infringed, and are continuing to infringe, Plaintiffs' copyright by reproducing, adapting, distributing, publicly performing, and publicly displaying, and authorizing others to reproduce, adapt, distribute, publicly perform, and publicly display copyrighted elements of *Screw Jam* without authorization, in violation of the Copyright Act, 17 U.S.C. § 501 et seq.

57.     Defendants' acts of infringement are willful, in disregard of, and with indifference to, the rights of Plaintiffs.

58.     As a direct and proximate result of the infringement alleged herein, Plaintiffs are entitled to damages and to Defendants' profits in amounts to be proven at trial, which are not currently ascertainable. Alternatively, Plaintiffs are entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

59.     Plaintiffs further are entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

60.     As a result of Defendants' acts and conduct, Plaintiffs have sustained and will continue to sustain substantial, immediate, and irreparable injury for which there is no adequate remedy at law. Plaintiffs are  informed and believe, and on that basis allege, that unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiffs' rights in *Screw Jam*. Plaintiffs are entitled to temporary, preliminary, and permanent injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor on each and every claim for relief set forth above and award them relief, including but not limited to:

1.  A judgment that Defendants have infringed Plaintiffs' copyright in violation of the Copyright Act and that the infringement was willful.

2.  An order preliminarily and permanently enjoining Defendants, their agents, servants, employees, officers, associates, attorneys, and all persons and entities acting by,

Mitchell
Silberberg &
Knupp LLP

18                          CASE NO. 3:25-cv-01173
**COMPLAINT**

through, or in concert with it, from manufacturing, producing, distributing, advertising, marketing, offering for sale, or selling *Screw Pin Puzzle / Screw Pin - Jam Puzzle*.

3. Ordering Defendants to file with the Court and serve on Plaintiffs, within thirty (30) days after entry of the injunction, a report in writing under oath detailing compliance with the injunction.

4. Requiring Defendants to deliver to Plaintiffs all copies of materials that infringe or violate any of Plaintiffs' rights described herein.

5. Requiring Defendants to provide Plaintiffs with an accounting of any and all sales of products or services that infringe or violate any of Plaintiffs' rights, as described herein.

6. Awarding Plaintiffs actual or statutory damages for copyright infringement and willful infringement under 17 U.S.C. § 504, as appropriate.

7. Awarding Plaintiffs their full costs and attorneys' fees in this action pursuant to 17 U.S.C. § 505 and other applicable laws.

8. Imposing a constructive trust over the proceeds unjustly obtained by Defendants through the sale of *Screw Pin Puzzle / Screw Pin - Jam Puzzle* in the United States or that stem from a predicate act of infringement in the United States, and/or any other products or services that violate any of Plaintiffs' rights described herein.

9. Awarding applicable interest (both prejudgment and post-judgment), costs, disbursements, and attorneys' fees.

10. Awarding such other and further relief as this Court may deem just, appropriate, and equitable.

DATED: February 4, 2025
       KARIN G. PAGNANELLI
       MITCHELL SILBERBERG & KNUPP LLP


       By: */s/ Karin G. Pagnanelli*
        Karin G. Pagnanelli
        Attorney for Plaintiffs
        Zynga, Inc. and Rollic Games Oyun Yazılım ve
        Pazarlama A.Ş.

1

## DEMAND FOR JURY TRIAL

2

Plaintiff hereby demands trial by jury of all issues so triable under the law.

3

4     DATED: February 4, 2025                    KARIN G. PAGNANELLI
                                                  Mitchell Silberberg & Knupp LLP
5

6

7                                          By: */s/ Karin G. Pagnanelli*
                                               Karin G. Pagnanelli
8                                              Attorney for Plaintiffs
                                               Zynga, Inc. and Rollic Games Oyun Yazılım ve
9                                              Pazarlama A.Ş.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

                                           20
                                    **COMPLAINT**                    CASE NO. 3:25-cv-01173